**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ISAAC KENNETH FULLMAN,** | : | **Civil No. 4:13-CV-235** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Brann)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CENTRE COUNTY COURTHOUSE,** | : | |
| **CENTRE COUNTY DISTRICT** | : | |
| **ATTORNEYS OFFICE, CENTRE** | : | |
| **COUNTY CORRECTIONAL** | : | |
| **FACILITY, DEPUTY WARDEN** | : | |
| **JEFFREY HITE, CAPTAIN JOHN** | : | |
| **PERRYMAN, ASSISTANT DISTRICT** | : | |
| **ATTORNEY SEAN MCGRAW,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This action is one of nine cases[1] recently filed by a *pro se* plaintiff, Isaac

Fullman, which involve a common nucleus of operative facts.  In each instance the

plaintiff, Isaac Fullman, has alleged that his civil rights were violated in connection

---

[1]Fullman v. Patton Township Police Dep't., 4:12-CV-1879; Fullman v. Penn State University Police Dep't., 4:12-CV-1880; Fullman v. Centre County District Attorney's Office, 4:12-CV-1881; Fullman v. State College Borough Police Dep't., 4:12-CV-1882; Fullman v. Ferguson Township Police Dep't., 4:12-CV-1883; Fullman v. Centre County District Attorney's Office, 4:12-CV-2061; Fullman v. Centre County Prison, 4:12-CV-2063; Fullman v. Blaniak, 4:12-CV-2233; Fullman v. Centre County Courthouse, 4:13-CV-325.

with a state criminal prosecution in Centre County for DUI and traffic offenses, or some other summary offense. Yet, in each instance, Fullman reveals that he stands convicted of the criminal charges which lie at the heart of the lawsuit. In fact, in some instances Fullman recites that he pleaded guilty to these offenses.

In the instant lawsuit Fullman has named three institutional defendants: the Centre County Courthouse, the Centre County Correctional Facility and the Centre County District Attorney's Office; and three individual defendants, Warden Hite, Captain Perryman and Assistant District Attorney McGraw. After naming these defendants, Fullman's complaint alleges that he was excessively punished for these crimes, in that he allegedly was improperly held in custody some 4 days beyond his release date in June 2011. While Fullman's complaint levels this accusation of excessive confinement, he does not allege any facts which link the named defendants, the county courts and district attorney, to this alleged constitutional infraction. In short, Fullman's complaint contains no well-pleaded facts explaining why the courts, prosecutors and prison supervisors may be personally liable to him for a subsequent alleged failure to timely release him.

Furthermore, Fullman's *pro se* complaint reveals that he litigated this claim in state court, but that his claim that he was held an excessive period of time was rejected by the state courts immediately prior to this filing of this lawsuit. (Doc. 1, p.4.) Thus, Fullman's current civil complaint seems to be a thinly veiled effort to

invite this court to review, and set aside, the sentencing judgment of the state courts in the plaintiff's criminal case.

On the basis of these allegations, Fullman seeks compensatory and punitive damages. Along with his complaint, Fullman has sought leave to proceed *in forma pauperis*. While we will grant Fullman's motion for leave to proceed *in forma pauperis*, (Doc. 2.), as part of our legally-mandated screening of *pro se*, *in forma pauperis* cases, we have carefully reviewed this complaint, and conclude that, in its current form, the complaint fails to state a claim upon which relief can be granted. Accordingly, for the reasons set forth below, it is recommended that the complaint be dismissed.

## II. Discussion

### A. Screening of *Pro Se* Complaints–Standard of Review

This court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically

enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."

Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. Fullman May Not Bring a Civil Rights Action Based Upon What Are Presently Valid Criminal Convictions and Sentences

At the outset, this complaint – like Fullman's prior civil complaints – fails because it rests on a fatally flawed legal premise. At bottom, Fullman seeks to bring these civil rights actions premised on claims arising out of valid state criminal convictions which he admits have not otherwise been set aside or overturned.

This he cannot do. Quite the contrary, it is well-settled that an essential element of a civil rights claim in this setting is that the underlying criminal case must

have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a claim based upon a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law. The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483( quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction. Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000).

In this case it is evident from Fullman's various complaints that his prior state criminal prosecutions did not terminate favorably for him, since he admits that he was convicted in each of these state cases. In fact, Fullman recites that the state courts

have reaffirmed their sentences against him as recently as January 23, 2013. (Doc. 1, p.4.) Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor", id., the immutable fact of Fullman's convictions presently defeats any federal civil rights claims based upon these state criminal cases, and compels dismissal of these claims. In short, this complaint continues to rest upon the fundamentally flawed legal premise that Fullman can sue state officials for civil rights violations arising out of his state criminal prosecutions even though he stands convicted of the crimes charged against him. Since this premise is simply incorrect, Fullman's complaint fails as a matter of law with respect to this particular claim.

### C. Fullman's Claims Against The District Attorneys Office and the Common Pleas Court Fail

In addition, Fullman's claims against the district attorney's office and the Centre County courts fail for yet another reason. While the nature of his claims against these prosecutors and courts is difficult to discern, it appears that the plaintiff is suing the prosecutors and courts for the very act of prosecuting and trying him on these criminal charges.

This he may not do. It is well-established that the principal federal civil rights statute, 42 U.S.C. § 1983, does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle

for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff, including whether any of the putative defendants are entitled to immunity from civil rights liability.

In this case, it is well-settled that a criminal defendant may not sue prosecutors for their act of filing charges against him since such conduct is cloaked in immunity from civil liability. The immunity conferred upon prosecutors for the quasi-judicial act of filing and bringing criminal charges is broad and sweeping:

> [T]he Supreme Court [has] held that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case." Court has noted numerous public policy considerations underlying its extension of absolute immunity to prosecutors: [S]uits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."

... [T]here are other checks on prosecutorial misconduct, including the criminal law and professional discipline.

Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006)(citations omitted).

Here, we find that Fullman's complaint seeks to hold prosecutors personally liable for their act of prosecuting him. Since these officials are immune from personal, individual liability for their actions in bringing this criminal case against him, Fullman's claims against this institutional defendant should also be dismissed.

Liberally construed, this *pro se* complaint also seeks to hold state court judges personally liable for alleged civil rights violations arising out of their performance of judicial acts in Fullman's various state criminal cases. To the extent that Fullman seeks in his complaint to hold state judges personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon these state cases, it is well-settled that such officials are individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled

to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Fullman from maintaining this civil action against any state judicial official. In particular, to the extent that he endeavors to name court judges in this complaint[2] those officials are entitled to judicial immunity for their actions in these state criminal proceedings since a judge is absolutely immune from personal liability for any judicial acts, including presiding over a criminal case or sentencing a defendant. See, e.g., Arsad v. Means, 365 F. App'x 327 (3d Cir. 2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). As another court explained when it rejected a similar effort to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v.

---

[2]Fullman's identification of the judicial defendant as the "Centre County Courthouse" creates some ambiguity regarding who he wishes to sue. However, regardless of whether Fullman seeks to sue individual judges, or the institution of the state courts, for the reasons set forth in this Report and Recommendation his claims fail.

Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011); Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir. 2007).

In short, since these officials are immune from liability for their roles in Fullman's criminal prosecutions, the plaintiff simply may not maintain an action against any of these judicial officers for judicial acts, and his claims against the defendant judges must be dismissed.

### D.     The Eleventh Amendment to the United States Constitution Bars This Lawsuit Against a State Agency

In addition, to the extent that Fullman's complaint endeavors to hold the entire state court system civilly liable for the outcome of these criminal cases, this *pro se* complaint also runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . ." U. S. Const. amend XI.

By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These state court agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the various county common pleas courts which are defined by statute as institutions of state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Therefore, absent an express waiver of the immunity established by the Eleventh Amendment, all of these court agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court. Moreover as a matter of statutory interpretation, the plaintiff cannot bring a damages action

against these state court agencies or state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

E. **The District Attorney's Office and the Courts Are Not Proper Defendants in an Eighth Amendment Excessive Confinement Claim**

In addition, in his latest lawsuit, Fullman advances a claim that he was held 4 days beyond his release date. Liberally construed, this allegation states an Eighth Amendment excessive confinement claim. However, such claims typically lie only against the jailer who knowingly and unreasonably confines an inmate for an excessive period of time, and may not be brought against the court which initially imposed the sentence that was led to the inmate's confinement. In this regard, the requisites for an excessive confinement claim are as follows:

> In the context of an Eighth Amendment claim for incarceration without penological justification, this Court has held that a plaintiff must demonstrate three elements to establish § 1983 liability against a *prison official*: (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention. Sample, 885 F.2d at 1110. Relevant circumstances in assessing these factors are the scope of the official's duties and the role the official played in the life of the prison. Id.

Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010)(emphasis added).

Notably, the courts have typically confined these claims to parole or prison officials who knowingly and erroneously execute an inmate's sentence, and have not extended these claims to the courts that imposed the initial sentence which was improperly executed. See e.g., Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010); Moore v. Tartler, 986 F.2d 682, 686 (3d Cir.1993); Sample v. Diecks, 885 F.2d 1099, 1107-08 (3d Cir.1989). This limitation on Eighth Amendment excessive confinement claims stems from a single, simple source. It is the court's sentence which defines the proper scope of an inmate's confinement. It, therefore, follows that the court cannot be held liable for an excessive confinement claim when the terms of its sentence are allegedly not subsequently followed by others.

This limitation on the reach of proper defendants in an Eighth Amendment excesses confinement claim compels dismissal of Fullman's claim as stated in his *pro se* complaint, to the extent that the complaint names the courts and district attorney as defendants, but contains no well-pleaded allegations that either of these institutional defendants are responsible for any alleged errors in the calculation and execution of Fullman's sentence. Since constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice, Robinson v. City of Pittsburgh, 120 F.3d

1286 (3d Cir. 1997), Fullman's failure–and inability–to show that the courts and the district attorney were personally involved in any alleged miscalculation of his release date from jail is fatal to this claim against these particular institutional defendants.

### F. The County Prison Is Not a Proper Defendant

Furthermore, to the extent that Fullman attempts to bring a lawsuit against the county prison as an institution the plaintiff may not maintain a prisoner civil rights action against this particular defendant. Rather, inmate civil rights actions under 42 U.S.C. §1983 may be brought against: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983 (emphasis added). Thus, §1983 limits liability to persons who violate constitutional rights, a limitation that courts have construed as not reaching county jails as institutions. In short, " the 'County Jail' is not a proper defendant in this § 1983 case[], because it is not a 'person.' See Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J.1989)(stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (D.C.Pa.1976); see also Marsden v. Federal BOP, 856 F.Supp. 832, 836 (S.D.N.Y.1994) (county jail not an entity

amenable to suit under 42 U.S.C. § 1983); <u>Powell v. Cook County Jail</u>, 814 F.Supp. 757, 758 (N.D.Ill.1993) (Cook County Jail not a 'person' under § 1983); <u>McCoy v. Chesapeake Correctional Center</u>, 788 F.Supp. 890, 893-94 (E.D.Va.1992) (local jail not a 'person' under § 1983)." <u>Crooks v. Passaic County Sheriff's Dep't/Jail</u>, CIV. 07-0092 (FSH), 2007 WL 923330 (D.N.J. Mar. 26, 2007). <u>See also</u>, <u>Thomas v. Wilbert</u>, CIV.A. 09-4796 GEB, 2011 WL 91001 (D.N.J. Jan. 11, 2011)("County Correctional Institution is not a proper defendant in a § 1983 case and must be dismissed from this action"). This limitation on the reach of proper defendants in an Eighth Amendment claim compels dismissal of this claim, as stated in this *pro se* complaint, with respect to the county jail, which is not a proper defendant in a civil rights action brought under §1983.

### G.  Fullman's Supervisory Liability Claims Fail In Their Current Form

Fullman has also named the warden, and a prison captain as defendants, but his legal and factual support for those claims is both sparse and inadequate, consisting largely of allegations that these officials oversaw prison operations. Notably lacking from the complaint are any well-pleaded allegations indicating that the defendant had personal and direct involvement in the decision to house Fullman in this facility for four days in 2011. In their current form, many of these supervisory liability claims fail as a matter of law. In considering claims brought against supervisory officials

arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,

691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 2073 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)." <u>Jetter v. Beard</u>, 183 F. App'x 178, 181 (3d Cir. 2006). Here, as to these supervisory defendants, the complaint bases liability, in large measure, on their supervisory status without further, specific and well-pleaded fact describing their involvement in this matter. This cursory style of pleading is plainly inadequate to state a claim against

a prison supervisor and compels dismissal of these defendants. <u>Hudson v. City of McKeesport</u>, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.) Instead, what would be needed is to sustain this particular claim is a complaint which contains well-pleaded allegations of the correctional defendants' personal involvement or acquiescence in conduct which meets the element of an excessive confinement claim; namely, a showing that: "(1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention." <u>Montanez v. Thompson</u>, 603 F.3d 243, 252 (3d Cir. 2010)(emphasis added).

## F. The Complaint Should be Dismissed Without Prejudice

In closing, we recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). In this case, Fullman has not alleged facts that would state a claim upon which relief may be

granted against the named defendants, and it appears that he may be unable to do so. Nonetheless, out of an abundance of caution, and in order to preserve the plaintiff's rights, it is recommended that this matter be dismissed without prejudice to Fullman attempting to amend this federal complaint to state a claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

Finally, we note that Fullman has also filed a motion requesting the appointment of counsel. (Doc. 3.) With respect to the appointment of counsel, it is clear that, in this setting, there is neither a constitutional nor a statutory right to counsel for *pro se* civil litigants. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). Notwithstanding this lack of a constitutional or statutory right to appointed counsel, in a civil case, 28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to employ counsel." A district court's appointment of counsel pursuant to this statute is discretionary and must be made on a case-by-case basis. Tabron, 6 F.3d at 157-58. The exercise of this discretion, however, is guided by certain basic principles. Gordon v. Gonzalez, 232 F. App'x 153, 156 (3d Cir. 2007). In Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit outlined the standards to be considered by courts when

reviewing an application to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1). In

passing on such requests we must first:

> "[D]etermine[] that the plaintiff's claim has some merit, then [we] should
> consider the following factors: (1) the plaintiff's ability to present his or
> her own case; (2) the complexity of the legal issues; (3) the degree to
> which factual investigation will be necessary and the ability of the
> plaintiff to pursue such investigation; (4) the amount a case is likely to
> turn on credibility determinations; (5) whether the case will require the
> testimony of expert witnesses; [and] (6) whether the plaintiff can attain
> and afford counsel on his own behalf."

Parham v. Johnson, 126 F.3d at 457.

There is yet another practical consideration which must be taken into account when

considering motions for appointment of counsel. As the United States Court of

Appeals for the Third Circuit has aptly observed:

> Finally, in addressing this issue, we must take note of the significant
> practical restraints on the district courts' ability to appoint counsel: the
> ever-growing number of prisoner civil rights actions filed each year in
> the federal courts; the lack of funding to pay appointed counsel; and the
> limited supply of competent lawyers who are willing to undertake such
> representation without compensation. We have no doubt that there are
> many cases in which district courts seek to appoint counsel but there is
> simply none willing to accept appointment. It is difficult to fault a
> district court that denies a request for appointment under such
> circumstances.

Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993). Mindful of this consideration it has

been "emphasize[d] that volunteer lawyer time is extremely valuable. Hence, district

courts should not request counsel under § 1915(d) indiscriminately. As the Court of

Appeals for the Second Circuit has warned: 'Volunteer lawyer time is a precious commodity.... Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.' Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir.1989)." Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993).

Here Fullman's request for appointment of counsel runs afoul of the threshold matter we must consider in cases of this type, the requirement that we must first "determine[] that the plaintiff's claim has some merit." Parham v. Johnson, 126 F.3d at 457. Our screening review of Fullman's *pro se* complaint has led us to conclude that this complaint lacks merit, and is barred by longstanding constitutional and common law immunities. Given that Fullman has not met this threshold showing justifying the discretionary appointment of counsel, his request for appointment of counsel should be denied at this time, without prejudice to further consideration of this issue as this litigation progresses.

## III.   Recommendation

Accordingly, for the foregoing reasons, the plaintiff's motion for leave to proceed *in forma pauperis* is GRANTED, (Doc. 2.), the plaintiff's motion for appointment of counsel is DENIED, (Doc. 3.), and IT IS RECOMMENDED that the plaintiff's complaint be dismissed for the failure to state a claim upon which relief

can be granted, but that the dismissal of this action be without prejudice to any effort by Fullman to timely allege facts in an amended complaint which might state a claim upon which relief may be granted, provided that Fullman files an amended complaint within 20 days of the entry of any dismissal order.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of February 2013.


*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge